UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA
Court File No.: _____

| | |
|---|---|
| CENTRAL ENTERTAINMENT GROUP, INC., <br><br> Plaintiff, <br><br> v. <br><br> LILIA'S ACTIVE, JOHN DOE, INC. an unknown business corporation with a business address located at 7200 93rd Avenue North, Suite 140, Brooklyn Park, MN 55445, and John Doe and Mary Roe, an unknown individual or individuals acting on behalf of Defendants, <br><br> Defendants. | **VERIFIED COMPLAINT** |

Plaintiff Central Entertainment Group, Inc., by and through the undersigned counsel, complaining of the Defendants LILIA'S ACTIVE, JOHN DOE, INC. an unknown corporation with a business address located at 7200 93rd Avenue North, Suite 140, Brooklyn Park, Minnesota 55445, and JOHN DOE and MARY ROE, an unknown individual or individuals acting on behalf of Defendants, as and for their verified complaint, state and allege as follows:

## PRELIMINARY STATEMENT

1.  This is a diversity action for breach of contract and other equitable and injunctive relief for Defendants' attempt to make an end run around its contractual obligations to Plaintiff to avoid paying for services rendered, as well

as Defendants' subsequent efforts to divest all of its assets to avoid paying their creditors, including Plaintiff.

2. Accordingly, and as set forth in more detail below, Plaintiff seeks to enforce its rights and obligations under the parties' agreements and to enjoin Defendants from:

    a. dissipating, selling, transferring, diverting or otherwise disposing in any manner of any and all of its inventory and assets, including all lines of products;

    b. ordering Defendants, their agents, officers, employees, representatives, and any third parties working on their behalf to immediately cease and desist from any and all attempts to make payments, divert funds, or process any further transactions other than through the ordinary course of business, which shall not include the execution upon any sale of products at discounts above 10%;

    c. ordering Defendants to place all inventory, assets, and accounts receivable in constructive trust; and

    d. freezing all operational, accounts payable, and accounts receivable for Defendants.

3. Enjoining Defendants as set forth herein will preserve the status quo and prevent irreparable harm to Plaintiff.

**PARTIES**

4. Plaintiff, Central Entertainment Group, Inc., (hereinafter "CEG") is a licensed and bonded New York talent/employment agency governed under the laws of the State of New York with the Dept. of Consumer Affairs license #1405288. CEG is a full-service talent agency, serving celebrities and social media influencers, casting live performances and personal appearances of celebrities, casting reality television, booking music acts, and partnering talent with brands in areas of health and wellness, beauty, fashion, food delivery, pet supplies, and so many more categories to run brands' marketing campaigns on social media. As a licensed agency, CEG is authorized to issue contracts and receive payments on behalf of talent from buyers such as brands and producers.

5. CEG is a resident of the State of New York.

6. Defendant Lilia's Active (hereinafter "Brand"), upon information and belief, is an activewear brand company and a resident of Minnesota with distribution and fulfillment centers located at 7200 93rd Avenue North, Suite 140, Brooklyn Park, Minnesota 55445. Upon information and belief, the Brand also has connections to the United Kingdom and Saudi Arabia.

7. Defendant John Doe, Inc. is an unknown corporation that has processed shipping orders through Lilia's Active's Minnesota offices, located at 7200 93rd Avenue North, Suite 140, Brooklyn Park, Minnesota 55445.

8.     Defendant John Doe and Mary Roe is an unknown individual or individuals acting in their individual capacity to further the unlawful activity of Lilia's Active as described below.

9.     Mohamed Osman Abdulle (hereinafter "Abdulle"), is an individual, owner/officer of Lilia's Active, whose present location is unclear, but was the main contact between the Brand and CEG for influencer services.

## JURISDICTION

10.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000.00 and there exists complete diversity of citizenship between Plaintiff and each Defendant.

11.    This Court has personal jurisdiction over Defendants because Defendants does business in Minnesota, have substantial contact with and may be found in the District of Minnesota, and a substantial portion of the events at issue have arisen and will arise in this judicial district.

## FACTS COMMON TO ALL CLAIMS

12.    Starting on or around March 11 2022, CEG and the Brand through ongoing discussions with Abdulle, had formulated and confirmed the number of influencers they wanted to engage, the price for engaging each influencer, and the duration to engage each influencer with CEG.

13.    On the basis of email exchanges and extensive conversation that would last through September 2022, CEG was induced and encouraged to reach out to hundreds of trusted, high-performing influencer relationships, including talent

managers, to offer talent the opportunity to work with the Brand on their activewear campaigns.

14. 42 offers among 39 influencers were confirmed, and CEG issued contracts to the talent to perform influencer marketing services during the span of August and September 2022 months.

15. The talent dutifully executed the campaigns by developing and creating video and photo, featuring and promoting the Lilia's Active brand, in accordance with the guidelines and direction of the Brand and CEG. The Brand had also provided custom codes to each influencer to track the sales derived from each influencer's posts.

16. The talent released this content to their audiences who engaged with the content and followed the Call To Action ("CTA"), for the audience members and soon-to-be-customers to take advantage of 10% off sales through the unique codes posted by the influencers.

17. After each influencer completed their obligation, CEG would individually invoice the Brand for payment of the specified talent fee set against the budget originally agreed to by the Brand and CEG.

18. Weeks began to pass, while the invoices remaining unfulfilled, and talent began questioning where their money had been. At the same time, CEG would remain entitled to commissions to pay the costs of running a talent agency and continuing to service the Brand and other brands and talent similarly situated.

19.   Upon the due dates of the invoices, the accounting team at CEG reached out to the Brand and Abdulle for payment but was ignored.

20.   Abdulle finally spoke with an agent from CEG regarding payment and refused to pay. Abdulle also let it be known that the investors that were financially backing the Brand had "pulled out" and were no longer funding the Brand's operations.

21.   CEG attempted to speak with Abdulle to come to an amicable solution to aid in repaying the debts owed to CEG and to the talent.

22.   Abdulle refused to take the matter seriously and continued to deny the obligation to pay.

23.   On Wednesday November 9, 2022, the Brand announced via email blasts and on social media that they were launching a discount on all products in their inventory for up to 80% off the retail price:

**LILIAS**
ACTIVE

**Up To 80% OFF!**

When Time to shop our ongoing sale! All products from our website discounted for you! Six collections ready to be added in your closet.



24. While CEG was still owed $158,350.00 in talent fees and commissions and the fact that the investors had purportedly pulled out of funding the Brand, the Brand could not possibly be able to absorb the costs of giving away their product at an 80% discount. According to the text of the offer, there is no expiration date or limitation on time to take advantage.

25. This fire sale discount follows from a 10% summer discount originally offered by the talent to their audience.

26. Since that time, there has been audience reaction that the Brand is a scam and that they never received the products they ordered.

27. Upon information and belief, Defendants are accepting orders from customers at the fire sale-discounted rate of 80% without any intent of honoring or fulfilling those orders and, instead, is sequestering all payments received from customer orders for the sole benefit of Defendants and Abdulle, and without regard for the debts Defendants owe.

28. Upon information and belief, Defendants are actively engaged in the process of diverting and divesting company assets to avoid their obligations to their creditors, including actively selling off their entire inventory at steeply discounted rates that are impracticable to cover the debts owed to Defendants' creditors. Upon further information and belief, Defendants are actively transferring or attempting to transfer virtually all of Defendants assets to third parties to avoid Defendants' creditors.

29. The acts of Defendants have and will continue to cause irreparable injury to Plaintiff if Defendants are not restrained by the Court from further violating Plaintiff's rights under the parties' agreement and as creditors. Additionally, Defendants are intentionally acting to deceive and mislead the public by representing that they have the ability to honor their commitments to fulfill orders—as evidenced by Defendants' attempts to significantly discount their purported inventory through a fire sale—when Abdulle has admitted to his investors and financiers that Defendants are pulling their funding from the Brand with no intent of honoring their commitments or fulfilling customer orders.

30. Plaintiff brings this action for Breach of Contract, Unjust Enrichment, Fraud, Conversion, and Constructive Trust, and demands that it is repaid based upon all of its invoices, that the Brand take the necessary steps to smooth over the relationships harmed between the agency, the talent, and the talents' audiences.

## COUNT I
## Breach of Contract

31. Plaintiff repeats and realleges each and every allegation set forth above, as though more fully set forth herein.

32. Defendants offered Plaintiff a budget to procure the services of social media influencers.

33. Defendants and Plaintiff agreed to the number of influencers they wanted to engage, the price for engaging each influencer, and the duration to engage each influencer.

34. Plaintiff accepted the confirmed budget based on that information and was induced and relied upon the solvency and the ability of the Brand to pay the influencers to engage and contract with the influencer talent to perform the services to promote the Brand.

35. By offering a budget, accepting the budget, and confirming the scope of services Plaintiff was to provide, the parties formed an enforceable agreement.

36. Defendants received the benefit of the services, as 42 different deals serviced a marketing campaign to the benefit of the Brand, by way of influencer marketing posts on social media to each influencer's audience.

37. Plaintiff performed all conditions precedent under the parties' agreement to compel performance thereof.

38. Defendants have materially breached the parties' agreement by, among other things, refusing to pay Plaintiffs for the services provided.

39. As a result of Defendants' breach, Plaintiff has suffered money damages of at least $158,350, plus costs and fees, and the damage to reputation and relationships with talent caused by the Brand's failure to pay, the exact amount of all damages to be determined at trial.

## COUNT II
## Unjust Enrichment

40. Plaintiff repeats and realleges each and every allegation set forth above, as though more fully set forth herein.

41. Defendants are refusing to pay outstanding invoices without reason to do so.

42. As a result of their savings for unlawfully withholding fees due to Plaintiff, Defendants are able to offer their customers an 80% discount on their items.

43. The savings realized by the Brand by unlawfully withholding payment to CEG also offsets the loss of their investors.

44. Defendants baselessly refuse to pay back the invoices despite repeated demands.

45. Defendants are unjustly enriched by unlawfully retaining the budget that is rightfully owed to the Plaintiff and the talent.

46. It would be unconscionable to allow the Defendants to benefit from their unlawful actions without restoring to Plaintiff with all available remedies.

47. As a result of Defendants' actions, Plaintiff has suffered losses in the amount of $158,350 in outstanding fees, loss of reputation to the talent, their audiences, and other brands, plus costs, time, and effort in instituting this lawsuit, the extent of the costs to which would be determined at trial.

### COUNT III
### Fraud

48. Plaintiff repeats and realleges each and every allegation set forth above, as though more fully set forth herein.

49. Defendants knowingly made false statements of material fact to induce Plaintiffs to book the influencer talent and provide services.

50. Defendants falsely claimed that Defendants were solvent and able to pay the budget that they confirmed with CEG.

51. Further, Defendants have defrauded the public and CEG by claiming to be able to withstand the costs of an 80% sale on their inventory, while the Brand is engaging in a fire sale to dump their inventory and avoid their creditors, including CEG.

52. Plaintiff relied upon the confirmed budget and was induced to book the services of their talent on the basis of the Brand's ability to pay and solvency.

53. Defendants have defrauded Plaintiff to Plaintiff's detriment through losses as to Plaintiff's goodwill and their relationship to talent, other brands and the public at large; their losses in commissions to CEG and to the talent fees to their

talent in the amount of $158,350, plus costs and fees, the total amount to be determined at trial.

## COUNT IV
### Conversion

54. Plaintiff repeats and realleges each and every allegation set forth above, as though more fully set forth herein.

55. Defendant received services from CEG and CEG's talent and all of the benefits derived from those services.

56. CEG had negotiated individual talent commission fees with each of the talent for the services to be provided to the Brand, and the Brand is currently withholding those commission fees to the talent.

57. Despite repeated demands from Plaintiff, Defendant refuses to pay the commissions fees without any justifiable reason whatsoever.

58. As a result of Defendants' actions, Plaintiff has suffered damages from the conversion of allotted talent commission fees, plus costs and fees associated with bringing this action, the full amount to be determined at trial.

## COUNT V
### Constructive Trust

59. Plaintiff repeats and realleges each and every allegation set forth above, as though more fully set forth herein.

60. Plaintiff and Defendants entered into a fiduciary relationship when Defendants agreed to a budget, and the Plaintiff agency was induced to procure the services of influencer marketing talent from 39 influencers.

61. Defendants obtained the value of the services provided but continue to retain the fees owed to the talent through their agency, Plaintiff.

62. Defendants remain unjustly enriched by unlawfully failing to pay the invoices to the Brand and using those savings to hold "80% off" fire sales, which is also an opportunity for the Brand and the other Defendants to dodge their creditors and shut the Brand down.

63. As a result of Defendants' actions, Plaintiff is entitled to a Constructive Trust, holding assets, inventory, funds, and proceeds in such constructive trust, with a receiver appointed to prevent any waste or unlawful dissipation of assets and funds.

## COUNT VI
## Account Stated

64. Plaintiff repeats and realleges each and every allegation set forth above, as though more fully set forth herein.

65. Defendant is indebted to Plaintiff in the amount of $158,350, plus interest, costs, fees, and disbursements.

66. From approximately August 12, 2022, through October 28, 2022, Plaintiff sent to Defendant regular invoices for the services rendered. Such invoices constitute a stated account.

67. Defendant received, accepted, and did not object to any of the invoices it received from Plaintiff.

68. Although duly demanded, Defendant has failed to pay Plaintiff for the stated account.

69. As a direct result of the aforementioned acts of the Defendants, Plaintiff has been damaged in the amount of $158,350, plus interest, costs, fees, and disbursements, and will continue to incur damages until such time as the stated account is paid.

## COUNT VII
## Voidable Transfer
## (Minn. Stat. §§ 513.41 et seq.)

70. Plaintiff repeats and realleges each and every allegation set forth above, as though more fully set forth herein.

71. Defendants have acknowledged that the Brand's investors have backed out from supporting the Brand and are no longer funding Defendants' operations and, upon information and belief, there has been reaction from consumers within the marketplace that the Brand is merely a scam and consumers are not receiving products that were ordered.

72. Upon information and belief, Defendants are actively engaged in the process of transferring, or have transferred, virtually all of Defendants' cash on hand and inventory to third parties to avoid collection activity.

73. Plaintiff was and is a present or future creditor of Defendants at the time that Defendants have transferred virtually all of Defendants' assets to third parties and Defendants have done so with the intent to hinder, delay, or defraud Plaintiff and other creditors.

74. Specifically, but without limitation, Defendants knew and intended that these transfers would put their assets outside Plaintiff's ability to collect through any post-judgment remedies available to Plaintiff.

75. Defendants' transfers of cash and inventory were to an insider, that Defendants retained possession or control of the property transferred after the transfer, Defendants concealed the transfer to avoid collection from impending litigation, and said transfers were for substantially all of Defendants' liquid assets.

76. Upon information and belief, the value of any consideration received by Defendants for the transfer was without a reasonably equivalent value in exchange for the transfer and Defendants believed, or reasonably should have believed that it would incur debts beyond its ability to pay as they became due.

77. For Defendants' actions described above, Defendants have violated Minnesota's Uniform Voidable Transactions Act, Minn. Stat. §§ 513.41, et seq. Accordingly, Plaintiff seeks to avoid all such transfers and requests prejudgment attachment consistent with Fed. R. Civ. P. 64 and Minn. Stat. § 570.025, or other provisional remedy preventing Defendants and anyone else acting in concert with Defendants, and any other transferee, from further transferring or dissipating funds necessary to satisfy Defendants' debts.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all claims so triable.

## **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff Central Entertainment Group, Inc., demands judgment against the Defendants, jointly and severally, as follows:

1.       As and to Plaintiff's causes of action, as set forth in Counts I–IV and VI, judgment in favor of the Plaintiff for at least $158,350 plus the maximum amount of interest available by law; together with the costs, fees and disbursements of this action, the exact amount to be determined at trial.

2.       As and to Plaintiff's cause of action, as set forth in Count V, judgment in favor of the Plaintiff whereby all Lilia's Active inventory, assets, and proceeds from sales should be impressed with a constructive trust in favor of the Plaintiff, with a receiver appointed to prevent any wasting of the assets and funds.

3.       As and to Plaintiff's cause of action, as set forth in Count VII, judgment in favor of the Plaintiff avoiding all such voidable transactions and an order for attachment or other provisional remedy to prevent Defendants and anyone acting in concert with them, and any other transferee, from further transfers or dissipating Defendants' funds and inventory.

4.       In addition to any attachment order or other provisional remedy, an order enjoining Defendants from:

    a.       dissipating, selling, transferring, diverting or otherwise disposing in any manner of any and all of its inventory and assets, including all lines of products;

    b.    ordering Defendants, their agents, officers, employees, representatives, and any third parties working on their behalf to immediately cease and desist from any and all attempts to make payments, divert funds, or process any further transactions other than through the ordinary course of business, which shall not include the execution upon any sale of products at discounts above 10%;

    c.    ordering Defendants to place all inventory, assets, and accounts receivable in constructive trust; and

    d.    freezing all operational, accounts payable, and accounts receivable for Defendants.

5.    Plaintiff's attorney fees and costs, if any and as allowed by law.

6.    Such other and further relief as the Court deems just and proper.

**CHRISTENSEN LAW OFFICE PLLC**

Dated: November 17, 2022

/s/ Aaron D. Sampsel
Carl E. Christensen (MN #350412)
Scott Jurchisin (MN #398241)
Aaron D. Sampsel (MN #398521)
305 North Fifth Ave., Suite 375
Minneapolis, MN 55401
Ph: (612) 473-1200
Carl@clawoffice.com
Scott@clawoffice.com
Aaron@clawoffice.com

*Attorneys for Plaintiff*
*Central Entertainment Group, Inc.*

## VERIFICATION

STATE OF NEW YORK )
) ss.
COUNTY OF NEW YORK )

**MICHAEL SCHWEIGER**, on behalf of Plaintiff Central Entertainment Group, Inc., being first duly sworn, deposes and says that he had read the foregoing Verified Complaint and knows the contents therefore and that the same is true and correct to the best of his information, knowledge, and belief.

Dated: New York, New York
November 17, 2022

Yours, etc.,

_____
Michael Schweiger, Owner/Founder

Central Entertainment Group, Inc.
10 West 37th Street, 10th Floor.
New York, NY 10018
T. 212-921-2190

Sworn to before me this 17 day of November, 2022

Notary Public _____    stamp:

```
FRANK B. POE
NOTARY PUBLIC, STATE OF NEW YORK
Registration No. 02PO6400325
QUALIFIED NEW YORK COUNTY
Commission Expires  11/12/20 23.
```